UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————————— x

UNITED STATES OF AMERICA, et al., *ex rel.*
URI BASSAN,

            Plaintiffs,

  -against-

OMNICARE, Inc.,

            Defendant.

———————————————————————————————— x

UNITED STATES OF AMERICA,

            Plaintiff,

  -against-

OMNICARE, INC. and CVS HEALTH CORP.,

            Defendants.

———————————————————————————————— x

15 Civ. 4179 (CM)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/18/2025

## DECISION AND ORDER DENYING OMNICARE'S MOTION FOR JUDGMENT AS A MATTER OF LAW; DENYING OMNICARE'S MOTION FOR A NEW TRIAL; AND DENYING CVS HEALTH CORPORATION'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

McMahon, J.:

    This omnibus order disposes of the outstanding post-trial motions in this case filed by Defendants Omnicare, Inc. ("Omnicare") and CVS Health Corporation ("CVSHC"). For the reasons stated below:

- Omnicare's Motion for Judgment as a Matter of Law, Dkt. No. 771, is DENIED;

- Omnicare's Motion for a New Trial, Dkt. No. 773, is DENIED; and

- CVSHC's Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial, Dkt. No. 769, is DENIED.

## LEGAL STANDARDS

*Motion for Judgment as a Matter of Law*

The Court may grant judgment as a matter of law under Fed. R. Civ. P. 50 "only when 'a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (quoting Fed. R. Civ. P. 50(a)(1)).[1] "Such a motion may only be granted if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture." *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 44 (2d Cir. 2025) (citation and quotation marks omitted). "The court must consider 'the evidence in a light most favorable to the nonmovant and grant that party every reasonable inference that the jury might have drawn in its favor.'" *Id.* (citing *Wolf v. Yamin*, 295 F.3d 303, 308 (2d Cir. 2002)). "The movant's burden is particularly heavy where, as here, the jury has deliberated in the case and actually returned its verdict." *Id.* (citing *Triolo v. Nassau Cnty.*, 24 F.4th 98, 105 (2d Cir. 2022)).

*Motion for a New Trial*

In order for the Court "to order a new trial under [Fed. R. Civ. P] 59(a), it must conclude that the jury has reached a seriously erroneous result or ... [that] the verdict is a miscarriage of justice, *i.e.,* it must view the jury's verdict as against the weight of the evidence." *Manley v. AmBase Corp.*, 337 F.3d 237, 244 (2d. Cir. 2003) (quotations marks omitted). The Fed. R. Civ. P.

---

[1] The standard for judgment as a matter of law at the close of evidence is the same as the standard for summary judgment. *See Piesco v. Koch,* 12 F.3d 332, 341 (2d Cir. 1993).

59(a) standard is "less stringent" than the standard for granting judgment as a matter of law under Fed. R. Civ. P. 50 "in two significant respects: (1) a new trial under [Fed. R. Civ. P.] 59(a) may be granted even if there is substantial evidence supporting the jury's verdict, and (2) a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner." *Id.* (quotations marks omitted).

## DISCUSSION

### I.    Omnicare's Motion for Judgment as a Matter of Law is Denied

Omnicare renews the arguments made in its Fed. R. Civ. P. 50(a) motions. Dkt. Nos. 736, 737; Tr. 3838-64. Omnicare argues that the jury did not have a sufficient evidentiary basis to find for the Government on the False Claims Act ("FCA") elements of falsity, materiality, or scienter. Omnicare also argues that the Government "did not provide evidence substantiating the jury's award of $135 million in damages." Dkt. No. 772 at 7.

#### a.    Falsity

With regard to falsity, Omnicare first argues that the Government did not present sufficient evidence of state-law prescription requirements to support its allegation that Omnicare dispensed medication without obtaining a valid prescription under the laws of 42 states. Dkt. No. 772 at 3. "Because the evidence could not support the jury's finding that Omnicare violated state law in each of the 42 states at issue," argues Omnicare, "the Court should enter judgment as a matter of law." *Id.* at 6.

As an initial matter, the Government alleged that Omnicare filed 11,516,060 false claims; the jury found that Omnicare had filed only 3,341,032 false claims, or close to 30% of what the Government alleged.[2] So, to the extent that there were any "gaps in [the Government's] proof"

---

[2] Precisely 29.01%.

3

regarding certain states' law, Dkt. No. 772 at 3, that is likely reflected in the verdict. Second, Omnicare has not shown a "complete absence of evidence" supporting the jury's verdict on falsity as is required to prevail on a Fed. R. Civ. P. 50 motion. *Edelman*, 141 F.4th at 44. The record contains evidence in the form of: (1) testimony from Omnicare pharmacy staff across states that Omnicare routinely dispensed drugs without valid prescriptions, *see, e.g.* Tr. 119-32 (Bassan), 948-50 (MacEwan), 1006-07 (Copley Brown); (2) internal communications conceding these practices, *see, e.g.* GX-126, GX-91, GX-105, GX-1604B; (3) agency findings from multiple jurisdictions, *see, e.g.* GX-1300 (Missouri), GX1305-1 (Missouri), GX-1328 (Missouri), GX-1302-1 (Utah), GX-1303-1 (Utah), GX-67 (Utah), GX-1317 (New York), GX-1606B (chronologies of state regulators' statements and communications to Omnicare); (4) third-party audits, *see, e.g.* GX-112-1 (Texas audit), GX-812 (Georgia audit), GX-821 (Illinois audit), GX-1601 (chronology of third-party audits); and (5) the expert testimony of pharmacology expert Dr. W. Thomas Smith, who reviewed a sample of approximately 87,000 rollover dispensings to assisted living facilities and other nonskilled facilities using the rollover functionality – more than 30% of which were not supported by any prescription whatsoever, *see* GX-1717.

Furthermore, Dr. Smith's testimony that 30% of the prescriptions in his sample were not supported by any sort of prescription – a finding that did not depend on the requirements of any state law – is more than sufficient to support the jury's conclusion that just under 30% of the 11,516,060 claims challenged by the Government as false were in fact false. *See United States v. Stewart*, 100 F. App'x 30, 31 (2d Cir. 2004) (citing *United States v. Masotto*, 73 F.3d 1233, 1241 (2d Cir.1996) and *Griffin v. United States*, 502 U.S. 46, 56-57 (1991) for the proposition that the Second Circuit "will uphold a verdict based upon jury instructions that permit multiple factual theories…where the evidence is sufficient to support one of the proffered theories.").

It also bears noting that only about 15% of Dr. Smith's findings were based on his application of various state laws, and those findings are sufficiently supported by record evidence.

Omnicare's second challenge to the jury's finding on falsity is that the Government has not proven implied legal falsity because Omnicare had no legal obligation to obtain valid prescriptions before dispensing drugs. This line of argument beggars belief, since 21 U.S.C. § 353(b)(1) provides expressly that a prescription drug may only be dispensed "upon a written prescription of a practitioner licensed by law to administer such drug"; "upon an oral prescription...reduced promptly to writing"; or "by refilling any such written or oral prescription *if such refilling is authorized by the prescriber*" (emphasis added). Omnicare also argues that 42 C.F.R.§ 423.104(h), which addresses how drugs under Part D prescription drug plans are covered and what beneficiaries pay, cannot serve as a basis for implied legal falsity because it states: "*A Part D sponsor* may only provide benefits for Part D drugs that require a prescription if those drugs are dispensed upon a valid prescription." (emphasis added). "Because the subsections only apply to Medicare Part D plan sponsors," argues Omnicare, "they cannot be the basis for a finding that *Omnicare's* claims were legally false." Dkt. No. 772 at 7. However, the Government's allegation was that Omnicare *caused* Medicare Part D plan sponsors to submit false claims to the Center for Medicare & Medicaid Services (CMS): Omnicare did not disclose to Plan D sponsors that the dispensings violated federal law requiring valid prescriptions, thereby *causing* Plan D sponsors to submit false claims to CMS. *See* Tr. 483-89, 4276-77.

In addition, the record sufficiently reflects that Omnicare's claims for reimbursement were factually false because Omnicare submitted inaccurate information to make it appear that drugs were being dispensed pursuant to valid prescriptions when they were not. The Government presented evidence that Omnicare's rollover practices generated false prescriber names,

prescription numbers, and prescription dates (among other data), which falsely indicated to the Government that Omnicare had obtained a new valid prescription, when it had not. Tr. 223-35, 275-76, 489-95, 510-15.

In sum, the jury had a sufficient evidentiary basis on which to conclude that at least some of the challenged claims were false.

Omnicare argues that the evidence is insufficient to support a finding that the claims at issue were false. Again, I do not agree.

The jury was presented with evidence that Omnicare failed to maintain prescription records in contravention of 42 C.F.R. § 423.505(d), which requires Medicare Part D sponsors and the downstream pharmacies in contract with them to retain records of prescription claims for a minimum of ten years from the date the prescription was filled. There was also evidence that Omnicare (1) set up its computerized dispensing systems to allow pharmacies to continue dispensing drugs on invalid prescriptions, Tr. 223-46, 262-77, 2250-51; and (2) failed to produce prescriptions supporting many of the rollover dispensings at issue in this case, Tr. 841. All this would support a jury conclusion that Omnicare had not obtained valid prescriptions at the time it sought reimbursement for dispensings at issue.

b.  Materiality

With regard to materiality, Omnicare argues principally that the Government affirmatively approved of Omnicare's dispensing practices; that the Government proved only technical violations of healthcare regulations that did not go to the essence of the parties' bargain, because the drugs dispensed were actually received by patients; and that the Government failed to present evidence that Omnicare's claims were false in a way that implicated an "express" condition of payment. Dkt. No. 772 at 6-12. I cannot agree with any of Omnicare's arguments.

*First*, the Government elicited testimony from Government employees and contractors that Medicare, Medicaid, and TRICARE would not pay for a drug dispensed if there was no valid authorizing prescription. *See* Tr. 1176-82, 1659-61, 568-73, 1104-05. As discussed above, there was ample evidence that this regularly occurred.

*Second*, there is sufficient evidence in the record to support the Government's argument that Omnicare's third-party audit department did not believe that CMS had endorsed Omnicare's dispensing practices or would have done so had it been aware of them. *See* GX-15, GX-148, GX-153, GX-11. Omnicare relied on the fact that it passed PEPV review to argue that the Government effectively authorized its dispensing practices. But the Government argued to the jury, after eliciting testimony from Chrissy Fowler, CMS's Director of Payment Accuracy & Reporting Group, that a PEPV review is not evidence that the Government acquiesced in Omnicare's dispensing practices, because PEPV was not an audit "designed to detect fraud, waste, and abuse," Tr. 1664-73, but only to generate a statistical estimate of CMS's error rate to report to Congress, Tr. 2561-65. The Government took the position that the limited PEPV audits of Medicare Part D sponsors did not prove that a legally valid prescription was not material to the Government's decision to pay. As the Government's position was supported by evidence, the jury was free to accept it. It obviously did.

*Third*, the Government argues – again, supported by record evidence – that the essence of its bargain with Omnicare was not payment for a prescription *dispensed to a patient*, but the payment for a prescription *dispensed upon a valid prescription*. *See* GX-1457, Tr. 481-83, 1104-05, 1176-82, 1659-61. This element was crucial to the Government's bargain with Omnicare because the prescription "serves as a safety checkpoint." Dkt. No. 782 at 18 (citing the testimony of Dr. David Nace's at Tr. 651-56, 714).

*Finally*, the Government provided sufficient evidence that Omnicare's false claims violated an express condition of payment, because the medications dispensed were eligible for reimbursement by the Government only if supported by valid prescriptions. *See* 42 C.F.R. § 423.104(h). Given the text of the regulation, it can hardly be said that there is a "complete absence of evidence" supporting the jury's verdict on materiality. *Edelman*, 141 F.4th at 44.

c. Scienter

With regard to scienter, there is ample evidence in the record that multiple Omnicare employees, including specifically compliance personnel, understood that Omnicare' dispensing practices presented a "big," GX-153, "huge," GX-166, and "basic pharmacy 101," GX-28, compliance issue. The evidence also showed that this practice was being monitored by Omnicare and CVS compliance officers as a compliance problem. *See* Tr. 1846-47, 1861-62, GX-209, GX-201. I made clear during the charge conference that I rejected Omnicare's proposed definition of corporate scienter; all that is required is for the jury to find that Omnicare's agents, acting within the scope of their duties, had the requisite state of mind. *See* Tr. 3947-65. The evidence in the record showed that numerous Omnicare employees were aware that Omnicare's dispensing practices created a compliance issue, which is sufficient to support a finding of scienter on Omnicare's part. And while Omnicare argued to the jury that CMS tacitly approved of Omnicare's dispensing practices, thus defeating the element of scienter, the jury was entitled to reject that argument for the reasons stated above.

Omnicare also argues that the Government failed to connect its scienter evidence to the correct universe of false claims. This is effectively an effort to reargue Omnicare's *Daubert* motion challenging the testimony of Dr. Mary-Beth Landrum. *See* Dkt. No. 494 at 5-6. Omnicare argues that the Government's definition of "rollover" should be limited to situations when a valid

8

prescription has actually lapsed – when a prescription *actually rolled over* – because its theory of scienter was tied exclusively to this particular computer-system function. But in its calculation of damages, the Government did not distinguish between claims that *actually* rolled over and claims that did not. As such, Omnicare argues that there is a disconnect – that Dr. Landrum did not identify the proper set of rollovers in her damages model, throwing off the Government's entire calculation of damages.

I do not agree that there is disconnect. Through trial – and even in its Complaint, *see* Dk. No. 17 at ¶ 3 – the Government's definition of rollover was broad enough to include "first dispensation[s] of a drug" that were based on "records that were not valid, legal prescriptions from healthcare providers with prescriptive authority," *id.* As such, I am not convinced that there is a disconnect between the universe of rollovers that Dr. Landrum used to create the sample dispensings that Dr. Smith reviewed and the universe of rollovers that the Government alleged resulted in the submission of false claims – certainly not enough "disconnect" for Omnicare to prevail on a Fed. R. Civ. P. 50 motion.

d. Damages

Finally, Omnicare seeks a new trial on damages, arguing that the jury's calculation of damages was fatally flawed. However, according to Omnicare, the jury's damages calculation is flawed "for the same reason [the record] does not support a finding of falsity." Dkt. No. 772 at 2. Accordingly, my response to Omnicare's challenge on the finding of falsity, *see supra* Part 1.a, applies with equal force to its challenge to damages.

Furthermore, Omnicare's challenge to the calculation of damages, Dkt. No. 772 at 22-25, is duplicative of its challenge to my damages jury instruction, Dkt. No. 774 at 6-7, which is

discussed in connection with the Court's disposition of Omnicare's Motion for a New Trial, *see infra* Part II.a. That discussion applies with equal force here.

Omnicare mounts literally dozens of additional attacks on the evidence, but it is not necessary to lengthen this opinion by addressing each and every one of them. For the purposes of a Fed. R. Civ. P. 50 motion, as long as it is clear that the jury verdict was not "the result of sheer surmise and conjecture," *Edelman*, 141 F.4th at 44, Omnicare's Motion for Judgment as a Matter of Law must be denied. The discussion in the preceding pages makes it clear enough that the jury's verdict was not the result of sheer surmise and conjecture. It was the result of the jury's acceptance of the Government's theory (but only as to some of the allegedly false claims) and its rejection of Omnicare's defenses. There was ample evidence to support both conclusions.

## II.     Omnicare's Motion for a New Trial is Denied.

Omnicare moves in the alternative for a new trial on multiple grounds. *See* Dkt. No. 774. None justifies the relief it seeks.

### a.     The Court's Jury Instructions

Omnicare argues that I should grant its motion for a new trial based on alleged errors in the jury instructions: "(i) the inclusion of a misleading industry-practice instruction as to falsity and corresponding failure to include industry-practice instructions as to scienter and materiality; (ii) the exclusion of a government-knowledge instruction; (iii) an unnecessary factual-falsity instruction; and (iv) a legally-erroneous damages instruction." Dkt. No. 774 at 7.

"A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law. A jury instruction will be deemed adequate if the charge ... is correct and sufficiently covers the case so that a jury can intelligently determine the

questions presented to it. An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Lore v. City of Syracuse*, 670 F.3d 127, 156 (2d Cir. 2012) (cleaned up).

*First,* Omnicare challenges the Court's jury instruction on industry-practice. My charge to the jury on industry practice was as follows:

> I charge you that pharmacies and pharmacists are required to follow applicable federal and state laws governing the dispensation of drugs. Industry practice that is contrary to the requirements of law does not supplant the law. If industry practice does not accord with the law, industry practice is not a defense to an assertion that a claim was false because it violates relevant law.

> Tr. 4215.

At the charge conference, Omnicare did not dispute that this was a correct statement of the law. *See* Tr. 3934. Rather, Omnicare argues that my instruction was prejudicial because it left the jury with the impression "that it could not consider evidence of industry practice for *any other* purpose, including scienter and materiality." Dkt. No. 774 at 2 (emphasis in the original).[3] Omnicare provides no basis for its speculation that this instruction "suggested" that industry-practice evidence "was irrelevant for all purposes" and that this, in turn, "was a likely factor in the jury's findings of scienter and materiality." Dkt. No. 774 at 3. The Court gave the jury a concededly correct statement of the law and narrowly tailored that instruction to the element of falsity – at Omnicare's request. Tr. 3942-43. Omnicare twice cites *United States ex rel. Patzer v. Sikorsky Aircraft Corp.*, 722 F. Supp. 3d 839, 854 (E.D. Wis. 2024) – an out-of-state district court case – for the proposition that industry practice is a valid defense to scienter. *See* Dkt. No. 774 at 2-3,

---

[3]    Omnicare sought the addition of the following language:

> By the same token, if a defendant acts in accordance with industry practice, that may be a factor suggesting the defendant did not act "knowingly"—that is, with a culpable state of mind. A prevailing industry practice that the Government knows about and does not object to also tends to weigh against a finding of "materiality."

> Dkt. No. 761 at 30.

Dkt. No. 827 at 1. But *Patzer* is inapposite. In that case, the regulation at issue was ambiguous. Here, there is no legal or regulatory ambiguity. Rather, Omnicare sought to negate scienter by arguing that there was a practice in the industry that contravened the law. In this circuit, that is not a valid defense. *See Reich v. S. New England Telecommunications Corp.*, 121 F.3d 58, 71 (2d Cir. 1997) (In the Fair Labor Standards context, a good faith showing by a defendant employer requires more than "ignorance of the prevailing law"); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 581 (2010) ("[A] misunderstanding about what the [Fair Debt Collection Practices Act] requires cannot render the violation 'not intentional,' given the general rule that mistake or ignorance of law is no defense."). My instruction does not "mislead the jury as to the correct legal standard or [in]adequately inform the jury on the law." *Lore*, 670 F.3d at 156. Nor did my instruction preclude Omnicare from directing the jury to evidence that chart orders, cycle fill and rollover dispensing were common in the long-term care industry. It did so in its summation. Tr. 4034-35, 4041.

*Next*, Omnicare argues that the Court should have instructed the jury that, when the Government knows and approves of the facts underlying an allegedly false claim prior to presentment, and the defendant knows the Government is aware of the false information in a claim, the Government's knowledge may negate the intent requirement under the FCA as a matter of law. Dkt. No. 774 at 4. Omnicare argues that my decision to deny that instruction was erroneous.[4] Again, I do not agree.

---

[4]    Omnicare sought the inclusion of the following instruction under a "Prior Government Knowledge" subsection:

> The government's prior knowledge of alleged false claims creates an inference that may negate the knowingly element of a False Claims Act cause of action. Therefore, if you find that the government knew Omnicare submitted claims for reimbursement for the dispensation of prescription drugs under the circumstances alleged in this case, and that Omnicare understood that the government knew this, then you should find that Omnicare and CVS Health Corporation did not violate the False Claims Act.

Dkt. No. 761 at 4.

As an initial matter, I agree with the Government that the Government's knowledge is principally relevant to materiality. *See Universal Health Servs., Inc. v. United States ex rel. Escobar,* 579 U.S. 176, 194-95 (2016). The challenged jury instruction was derived directly from *Escobar,* so Omnicare therefore fails to show that my instructions, "as a whole," did "not adequately inform the jury of the law." *Lore,* 670 F.3d at 156.

Furthermore, a Government-knowledge inference would only have been appropriate where Omnicare had openly disclosed to the Government that it was causing government health insurance programs to be billed for drugs that, due to its rollover practices and record-keeping deficiencies, were dispensed without valid prescriptions. *See United States ex rel. Kreindler & Kreindler v. United Techs. Corp.,* 985 F.2d 1148, 1156 (2d Cir. 1993) (holding that the fact that the contractor had fully disclosed all information to the Government may show that the contractor did not "knowingly" submit a false claim). That, simply put, did not occur here. Again, in light of the testimony of Chrissy Fowler, the jury was free to find that undergoing PEPV audits, on which Omnicare placed such great reliance, did not constitute "disclosure" of its practices to the Government.

Finally, if there was any error, it was harmless, because Omnicare argued in summation that evidence of Government knowledge negated a finding on the element of scienter. *See* Tr. 4069-70.

*Third*, Omnicare argues that the Government's case did not include a factual-falsity theory (only an implied legal falsity theory) and, therefore, the Court's instruction on factual falsity "invited an unwarranted basis for liability." Dkt. No. 774 at 10. Again, it is incorrect.

The Government presented an independent factual-falsity theory, arising from the fact that Omnicare's rollover practices generated false prescriber names, prescription numbers, and

prescription dates, which falsely indicated that Omnicare had obtained a new valid prescription. *See* Tr. 223-46, 262-77, 2250-51. This is not an implied legal falsity theory; it is an alternative basis for liability. Omnicare's eleventh-hour attempt to raise a dispute about whether this claims data was factually false, or indeed whether it was submitted to CMS, is completely unavailing. Omnicare chose not to dispute the Government's evidence on these issues at trial, so it has waived its right to do so now.

*Fourth*, as noted above, Omnicare quibbles with the Court's damages instruction. I charged the jury that damages should be awarded in "the amount the Government paid by reason of any false or fraudulent claim over and above what it would have paid if the claim had been truthful." Tr. 4227. I also charged that, "where the Government has provided funds for a specified good or service only to have the defendant substitute a nonconforming good or service, damages may be calculated as the full amount of the payments made by the Government." Tr. 4227. Omnicare argues that I should have charged the jury that as long as the patients received the drugs for which the Government paid, the Government received the benefit of its bargain and was not damaged.

But Omnicare's position is inconsistent with *United States ex rel. Feldman v. van Gorp*, 697 F.3d 78, 87-91 (2d Cir. 2012) (explaining that the "benefit of the bargain" standard is "not…the methodology generally employed by courts evaluating FCA claims based on Medicaid or Medicare fraud" and concluding that the appropriate measure of damages in such a case is "the full amount the [G]overnment paid based on materially false statements" because the Government received "no tangible benefit" from the defendant's conduct). The clarification on this point that was given in response to a jury question was consistent with my original instruction and so cannot be deemed confusing. *See* Tr. 4274-75.

In short, I see no error in the above jury instructions and, to the extent that there was any error, it was harmless because it did not prevent Omnicare from presenting its arguments to the jury.

### b. The Court's Evidentiary Rulings

Omnicare also challenges five of the Court's evidentiary rulings. Omnicare can only prevail on such a challenge if it demonstrates that an "error was not harmless." *Grant v. Lockett*, No. 19-1558, 2021 WL 5816245, at *2 (2d Cir. Dec. 8, 2021) (citation omitted). "[A]n evidentiary error in a civil case is harmless unless the [losing party] demonstrates that it is likely that in some material respect the factfinder's judgment was swayed by the error." *Tesser v. Bd. Of Educ.*, 370 F.3d 314, 319 (2d Cir. 2004) (cleaned up). District courts grant new trials when evidence that is admitted or excluded turns out to be highly prejudicial (if admitted) or highly relevant (if excluded). *See, e.g. Tse v. UBS Fin. Servs., Inc.*, 568 F. Supp. 2d 274, 308 (S.D.N.Y. 2008).

*First*, Omnicare challenges the Court's ruling allowing Andrew Ranck and Jodi Sullivan to testify as lay witnesses. Omnicare challenges my ruling on the grounds that Ranck and Sullivan lacked "personal knowledge of the issues as they pertained to Omnicare," and were, therefore, effectively testifying as experts. Dkt. No. 774 at 9. Not so. "Even people with somewhat technical jobs can testify as fact and not expert witnesses to facts about how they did their jobs in particular instances." *SEC v. Genovese*, 2022 WL 16748779, at *3 (S.D.N.Y. Nov. 7, 2022); *see also United States v. Rigas,* 490 F.3d 208, 224 (2d Cir. 2007) (holding that the employee witness did not give impermissible expert testimony since his testimony was based upon his observations during his twenty months as an employee, who was well-acquainted with company records and not basing his testimony on specialized knowledge). Here, the testimony of both Ranck and Sullivan was properly admitted under Fed. R. Evid. 602 and 701 as their testimony was a reflection of their own

work as CMS contractors and based on their personal familiarity with different types of CMS data – in Sullivan's case, familiarity with the Medicare Part D program and claims submission and payment process, and in Ranck's case, familiarity with the compliance audit process.

*Second*, Omnicare challenges several of the Court's rulings relating to evidence about subsequent remedial measures. *See* Dkt. No. 675 at 4. As an initial matter, Omnicare made a narrow request that I exclude evidence of three specific coding changes made to its computer systems in 2015, 2016, and 2018 to "turn off" rollover dispensing – *i.e.*, to correct the "big" compliance problem that its own people had identified. Dkt. No. 591 at 1-2. I granted that motion in part and denied it in part; I refer the reader to my reasoning therefor, on which I continue to rely. *See* Dkt. No. 675 at 1-2. To the extent that Omnicare seeks to broaden its original objection to encompass *any measures* "stemming from the October 2015 Civil Investigative Demand," that objection is untimely and therefore waived. *See United States v. Spruill*, 808 F.3d 585, 597 (2d Cir. 2015).

My ruling with regard to the admission of GX-147 is consistent with what was provided in the order, *see* Dkt. Nos. 675 at 4-5, 702 at 5, because GX-147 concerned "instances where the coding was changed back," Tr. 1013-14, and was therefore admissible to provide context for testimony regarding Omnicare's decisions to change back the coding to permit rollover dispensing after stopping it. This evidence that was highly relevant to scienter – especially in light of evidence that the reason for the "change back" was financial, *see* GX-416-1 – and it is anything but violative of Fed. R. Evid. 403, because its probative value on that issue vastly outweighs any prejudice arising from the admission of evidence about the "change back." The only "prejudice" that arguably arose from the admission of this evidence is the sort of "prejudice" that arises from unfavorable evidence – not the kind of unfair prejudice addressed by Fed. R. Evid. 403. Furthermore, Omnicare "opened the door" to testimony about the computer coding change-back

by eliciting testimony about the lengthy time it would take to make "IT enhancements" to OmniDX and Oasis. It was then Omnicare's own tactical decision not to provide the additional "critical context" about the remedial measures in the aftermath of the Court's decision.

For good measure, I note that the jury was given a limiting instruction with respect to the evidence about the undoing of the previous remedial measure. Tr. 4202. This rendered any error harmless.

*Third*, Omnicare challenges the Court's decision to permit Dr. Nace to testify about the general risk of harm that could arise if elderly patients used medications without proper monitoring by prescribers. Omnicare's challenge is rooted in its persistent argument that no patient was harmed by its prescribing practice; it takes the position that any evidence about the potential for harm was irrelevant and prejudicial.

I disagree. As I stated at trial, evidence about the potential for harm was entirely appropriate background information for the jury to understand why prescription rules are necessary. *United States v. Blackwell,* 853 F.2d 86, 88 (2d Cir. 1988) ("[E]vidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding."). I did not admit any evidence of *actual* patient harm, consistent with my *Daubert* order. *See* Dkt. No. 568 at 7. Also consistent with that ruling, I charged the jury that "harm to a patient is not an element" of the Government's FCA claims. Tr. 4213. So the error, if any, is harmless.

*Fourth*, Omnicare challenges a ruling made during the cross-examination of Dr. Smith. In that ruling, I sustained the Government's objection to Omnicare's question to Dr. Smith about whether there might exist prescription records that Omnicare did not produce in discovery but were "kept in the long-term-care facility, as industry standards dictated." Dkt. No. 774 at 16 (citing Tr.

906-09). As I explained in an earlier decision, "Omnicare is perfectly free to offer evidence in rebuttal tending to show that it had access to a valid prescription from some source…Omnicare is not, however, free to ask the jury to speculate that it might have had access to a valid prescription somewhere at some time that would have allowed it to dispense the drugs that are the subject of this lawsuit." Dkt. No. 675 at 6. Testimony about the theoretical existence of prescription documents would have been irrelevant and prejudicial. In any event, any error in "prevent[ing] Omnicare from cross-examining Dr. Smith about…the universe of documents he ignored," Dkt. No. 774 at 21, would have been harmless, since the jury was made aware that Dr. Smith only reviewed documents produced to him by Omnicare, *see* Tr. 909-10 (Dr. Smith), 3758, 3797-99 (Sherry Pound).

*Fifth*, Omnicare challenges the Court's pre-trial decision not to compel the Government to produce documents relating to non-PEPV audits. In particular, Omnicare sought the production of documents relating to an audit that a third-party, recovery audit contract ("RAC") suggested that CMS conduct to examine the dispensation of drugs with expired prescriptions. This RAC audit was considered but it was never conducted. In other words, there was no such audit.

To the extent that Omnicare seeks to reopen matters decided by Magistrate Judge Figueredo during the course of discovery concerning the audit that never was, Dkt. Nos. 370, 470, it is far too late. I already overruled Omnicare's objections to her orders, Dkt. No. 474, *see also* Tr. 3706. I am not prepared to have that matter reargued now, and I have no reason to second guess either myself or the Magistrate Judge. Furthermore, I agree with the Government that the cases Omnicare cites to support its argument are inapposite, because they involved "selective disclosure" by an agency, of which there is no evidence here. Dkt. No. 774 at 19 (citing *Allstate Ins. Co. v. Serio*, No. 97 CIV. 0670 (RCC), 2000 WL 554221, at *11 (S.D.N.Y. May 5, 2000) and *In re Methyl*

*Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 898 F. Supp. 2d 603, 610 (S.D.N.Y. 2012)).

Finally, I do not believe that evidence about an audit that was never conducted (the RAC audit,

which was proposed but not done) would have changed the jury's verdict on materiality.

c. <u>Admission of Dr. Smith's Testimony on Pharmacy Dispensing Standards</u>

Omnicare argues that the testimony from Dr. Smith about the requirements of pharmacy

law in various states was improper because he testified about matters that are the province of the

Court. The argument is meritless.

Dr. Smith – a duly qualified expert of pharmacology, who teaches pharmacists about how

to comply with the law for a living – testified about whether Omnicare's dispensing practice was

consistent with the core pharmacy requirement in a number of states, whose laws required a valid

prescription before dispensing drugs. *See* Tr. 926; *see also* Tr. 775-78, 781, 788. In applying state-

law requirements to his assessment of Omnicare's drug authorization records, Dr. Smith engaged

in the type of pharmacist practice that pharmacists are trained to perform in their day-to-day

practice. Experts regularly provide opinions related to legal requirements in regulated industries.

*See, e.g., In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 467 (S.D.N.Y. 2016)

(collecting cases in which "courts admit[ed] expert testimony regarding companies' compliance

with FDA regulations"); *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, n.16 (S.D.N.Y.

2009) ("Expert testimony on regulatory compliance will assist the jury in determining whether [the

defendant] acted as a reasonable prudent pharmaceutical manufacturer."). Dr. Smith's testimony

did not usurp the role of the judge. *See Fosamax*, 645 F. Supp. 2d at 191 & n.16 (distinguishing

between the "state law theories of negligence and strict liability" that govern the case and "federal

regulations" discussed by the expert). I alone instructed the jury on the FCA – the law governing

this case. *See United States v. Sinclair*, 74 F.3d 753, 757 n.1 (7th Cir. 1996) ("Federal Rules of

19

Evidence 702 and 704 prohibit experts from offering opinions about legal issues that will determine the outcome of a case. That is, they cannot testify about legal issues on which the judge will instruct the jury."). Dr. Smith made no effort to instruct the jury on FCA law. And as I gave no instruction on any aspect of state pharmacy law, there were no "competing interpretations," Dkt. No. 774 at 22, and no risk that the jury might substitute Dr. Smith's views for my instructions.

Finally, any potential error was harmless. Of the dispensings Dr. Smith identified as invalid, many were based on the fact that there was no authorization – no prescription whatever – for the drug dispensation. *See* Tr. 772-73, 819-24, 841-42, 926. As noted above, the existence of a prescription is a federal requirement, and so required no application of state-specific standards. Moreover, Omnicare had the opportunity both to cross-examine Dr. Smith and offer its own competing expert – an option it chose not to exercise.

### d. The Weight of the Evidence

Omnicare argues that the verdict was against the weight of the evidence. As I have held before, "the Second Circuit has instructed district courts to abstain from interfering with a jury verdict unless it is quite clear that the jury has reached a seriously erroneous result that would result in a miscarriage of justice." *Fioto v. Manhattan Woods Golf Enters., LLC.,* 304 F. Supp. 2d 541, 545 (S.D.N.Y. 2004) (cleaned up). There is absolutely no basis on which I could conclude that the jury's verdict was seriously erroneous, much less a miscarriage of justice. Omnicare's challenges are duplicative of those raised elsewhere in this motion and its Motion for Judgment as a Matter Law; they are discussed in greater detail in Part I. And after carefully considering the evidence myself, I fear Omnicare would have lost had the case been tried to the Court. That being so, I would be hard-pressed to find that the verdict went against the weight of the evidence.

### III. CVSHC's Motion for Judgment as a Matter of law, or in the Alternative for a New Trial, is Denied.

On April 13, 2025, CVSHC moved for a directed verdict subject to Fed. R. Civ. P. 50(a). Dkt. No. 734. On April 25, 2025, I reserved judgment on the motion until after the jury had reached a verdict. Tr. 2203, Dkt. No. 756. The jury returned a verdict against CVSHC on April 29, 2025. On June 5, 2025, I entered an order denying CVSHC's motion for a directed verdict and declining to overturn the verdict. Dkt. No. 768. On June 6, 2025, CVSHC filed the instant motion. Dkt. No. 769.

The instant motion is procedurally improper. Fed. R. Civ. P. 50(b) allows a party to renew its Fed. R. Civ. P. 50(a) motion after a verdict only if the Court has not ruled on that motion post-verdict. *See Tolbert v. Queens College*, 242 F.3d 58, 70 (2d Cir. 2001) ("After an unfavorable verdict, [Fed. R. Civ. P.] 50(b) allows the party to 'renew' its motion. The posttrial motion is limited to those grounds that were specifically raised in the prior motion for JMOL; the movant is not permitted to add new grounds after trial." (cleaned up)). Because I denied the Fed. R. Civ. P. 50(a) motion after the verdict, there is nothing to "renew," and I will not consider new arguments. The motion is therefore denied, and I refer the parties to the merits discussion in my June 5 decision, *see* Dkt. No. 768.

In the alternative, CVSHC seeks a new trial on substantially the same grounds as it moves for judgment as a matter of law – namely, that the verdict was against the clear weight of the evidence because "there is no evidence that CVSHC participated in the submission of claims, in in setting Omnicare's policies." Dkt. No. 770 at 16. For the reasons outlined in my June 5 opinion, Dkt. No. 768, that issue has been resolved adversely to CVSHC. Nothing in its moving papers causes me to change my mind on that score.

CVSHC also challenges the series of subsequent remedial measure rulings addressed in connection with Omnicare's corresponding motion; for the reasons discussed in Part II.b, I reach the same conclusion on CVSHC's challenge.

CVSHC's motion for a new trial is, therefore, denied.

## CONCLUSION

For the reasons stated above, Defendant Omnicare's Motion for Judgment as a Matter of Law is DENIED; Defendant Omnicare's Motion for a New Trial is DENIED; and Defendant CVSHC's Motion for Judgment as a Matter of Law, or in the Alternative, for a New Trial is DENIED.

This constitutes a written opinion. The Clerk is directed to remove the motions at Dkt. Nos. 769, 771 and 773 from the Court's list of open motions.

The Clerk of Court is directed to enter judgment in favor of the Government as against Omnicare, Inc. in the amount of $948,778,444.10, which consists of damages in the amount of $406,778,444.10 in damages ($135,592,814.70 trebled), plus $542,000,000 in statutory penalties, $164,800,000 of which is joint and several with CVS Health Corporation, *see* Dkt. No. 779.

The Clerk of Court is further directed to enter judgment in favor of the Government as against CVS Health Corporation in the amount of $0 in damages and $164,800,000 in statutory penalties, as to which its liability is joint and several with Omnicare's. *See* Dkt. No. 779.

When judgment is entered, the Clerk is directed to CLOSE this case.

Dated: August 18, 2025

_____

U.S.D.J.